Michael P. Pappas, Esq. (MP 6716)
MICHAEL P. PAPPAS LAW FIRM, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 770-7890 (phone)
(646) 417-6688 (fax)

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

UNITED STATES DISTRICT
EASTERN DISTRICT OF NEW YORK

---

FERNANDO HERNANDEZ, on behalf of himself and all others similarly situated,

                Plaintiffs,

-against-

HEALTHY HEART FOOD SERVICE, INC., DANIEL SPIRA, and JONATHAN SPIRA,

                Defendants.

**Case No.**

**COMPLAINT**

**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

---

Plaintiff Fernando Hernandez, on behalf of himself and all others similarly situated, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York Labor Law ("NYLL") claims under 28 U.S.C. § 1367 because they are so related to the claims in this action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein took place in this District.

## THE PARTIES

3. Defendant Healthy Heart Food Service, Inc. ("Healthy Heart") is a New York corporation located at 311 Scholes Street, Brooklyn, New York 11206. Healthy Heart is engaged in the business of meal preparation and delivery to senior centers, day care facilities, private and public schools, and corporations. During a typical week, Healthy Heart produces and delivers 40,000 to 45,000 meals.

4. Upon information and belief, Healthy Heart has an annual gross volume of sales in excess of $500,000 and is engaged in interstate commerce.

5. At all relevant times, Healthy Heart employed more than 11 persons within the City of New York.

6. Defendant Daniel Spira is an owner, shareholder, and operator of Healthy Heart. Mr. Spira exercises sufficient control over Healthy Heart's day-to-day operations to be considered an employer of the Named Plaintiff and those similarly situated. Among other things, Mr. Spira had the power to hire and fire employees, supervised and controlled employees' daily activities, determined the rate and method of payment of employees' wages, and had responsibility for maintaining employment records.

7. Defendant Jonathan Spira is an owner, shareholder, and operator of Healthy Heart. Mr. Spira exercises sufficient control over Healthy Heart's day-to-day operations to be considered an employer of the Named Plaintiff and those similarly situated. Among other things, Ms. Spira had the power to hire and fire employees, supervised and controlled

employees' daily activities, determined the rate and method of payment of employees' wages, and had responsibility for maintaining employment records.

8. All Defendants are hereinafter referred to collectively as "Defendants".

9. Plaintiff Fernando Hernandez is an adult male individual who resides in the State and City of New York. Hernandez was employed by Defendants as a route driver from approximately December 2016 to July 2019. Hernandez typically worked six days a week and an average of 50-60 hours per week. Hernandez is hereinafter referred to as "Named Plaintiff".

## FLSA COLLECTIVE ACTION ALLEGATIONS

10. The Named Plaintiff brings this as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), on behalf of all persons employed by Defendants as route drivers at any time on or after the date that is three years before the date this action was filed ("FLSA Collective Plaintiffs").

11. At all relevant times, the Named Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common policies, programs, practices, procedures, protocols, routines, and rules, willfully failing and refusing to pay them legally-required wages. The claims of the Named Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs

12. This action is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided

to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NYLL**

13. The Named Plaintiff brings this as a class action pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 23, on behalf of all route drivers employed by Defendants at any time on or after the date that is six years before the date this action was filed (the "Class Period").

14. All said persons, including the Named Plaintiff, are referred to herein as the "Class". The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The work schedules, positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, the Class members' names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed.R.Civ.P. 23.

15. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

16. The Named Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay

minimum wage, failure to pay overtime compensation, and failure to provide wage notices and statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. The Named Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

17. The Named Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. The Named Plaintiff is represented by an attorney who is experienced and competent in both class action litigation and employment litigation, and has previously represented parties in collective/class wage and hour cases.

18. A class action is superior to other available methods for the fair and efficient adjudication of the controversy -- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burdens of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

19. Upon information and belief, Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint with a degree of anonymity that allows for the vindication of their rights while eliminating or reducing these risks.

20. There are questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed the Named Plaintiff and the Class within the meaning of New York law;

   b. Whether Defendants paid the Named Plaintiff and the Class members the minimum wage for all hours worked;

6

  c. What are and were the policies, programs, procedures, protocols and plans of Defendants regarding payment for the type of work that the Named Plaintiff and the Class members performed;

  d. At what common rate, or rates subject to methods of calculation, was and is Defendants required to pay the Named Plaintiff and the Class members for their work;

  e. Whether Defendants properly compensated the Named Plaintiff and the Class members for overtime; and

  f. Whether Defendants provided the Named Plaintiff and the Class members with legally-required wage notices and wage statements.

21. The Named Plaintiff, FLSA Collective Plaintiffs, and Class members are referred to collectively hereinafter as "Plaintiffs".

## **FACTS**

22. The Named Plaintiff's consent to sue form is attached hereto as Exhibit A.

23. Defendants committed the following alleged acts knowingly, intentionally, and willfully.

24. Defendants knew that (i) nonpayment or underpayment of minimum wage, (ii) nonpayment or underpayment of overtime, (iii) failing to provide Plaintiffs with legally-required wage notices, and (iv) failing to provide Plaintiffs with legally-required wage statements, would economically injure Plaintiffs.

## Misclassification

25. At all relevant times, Defendants misclassified Plaintiffs as "independent contractors" rather than employees.

26. The economic realities of the relationship between Defendants and Plaintiffs demonstrate that Plaintiffs were employees of Defendants.

27. Plaintiffs' primary duties as route drivers for Defendants were to pack prepared meals into vehicles and deliver the meals to Defendants' clients.

28. Plaintiffs performed duties for Defendants on an ongoing basis that were an essential and integral part of Defendants' business.

29. Defendants controlled the manner and means of Plaintiffs' job performance.

30. Defendants set Plaintiffs' work schedules.

31. Defendants instructed Plaintiffs when and where to deliver the meals, and provided them with a delivery manifest each day.

32. Defendants kept track of Plaintiffs' attendance and would penalize drivers who did not report for work, did not report to work at the scheduled time, or did not work to the scheduled time.

33. Plaintiffs did not operate independent delivery businesses and did not hold themselves out to the public as delivery businesses.

34. Plaintiffs worked full-time for Defendants and did not perform delivery services for other companies.

35. Defendants required Plaintiffs to wear hats with Defendants' company logo.

36. Defendants offered to pay Plaintiffs' business expenses, including gas, tolls, and parking tickets.

37. As a result of Defendants' misclassification of Plaintiffs, Defendants failed to record Plaintiffs' actual hours of work, failed to pay them at the legally-required minimum wage and overtime rates for employees, and failed to provide them with required wage notices and wage statements.

## Failure to Pay Minimum Wage

38. Defendants unlawfully paid Plaintiffs at a rate that was and is below the state minimum wage.

39. From the beginning of the limitations period(s) to the present, Defendants paid route drivers an effective hourly rate that was below the legally-required minimum wage for New York City employers with more than 10 employees.

40. At all relevant times, Defendants paid Plaintiffs at the rate of approximately $35 per delivery. Based on the typical number of route stops possible in one day, Plaintiffs generally earned an average of $500-$600 per week, while working 50-60 hours, for an effective hourly rate of approximately $10/hour.

41. At all times subsequent to December 31, 2016, the lawful minimum wage was greater than $10/hour for employees of New York City employers with more than 10 employees, like Defendants. Specifically, the lawful minimum wage was $11/hour in 2017; $13/hour in 2018; and $15/hour in 2019.

42. Named Plaintiff Hernandez was subjected to the above unlawful wage practices. At all relevant times, Defendants paid Hernandez an effective hourly rate of approximately $10/hour for all hours worked, which was below the lawful minimum wage to which he was entitled in 2017, 2018, and 2019.

43. As a result of Defendants' failure to pay Plaintiffs at least the lawful minimum wage in 2017, 2018, and 2019, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to all damages provided for by statute, including, but not limited to, unpaid wages, 100% liquidated damages, and attorneys' fees.

### Failure to Pay Overtime

44. Defendants did not pay Plaintiffs overtime at the rate of 1.5 times the greater of their regular hourly rate or the lawful minimum wage for hours worked in excess of 40 per work week.

45. Plaintiffs frequently worked in excess of 40 hours per work week.

46. At all relevant times, Defendants paid Plaintiffs at the rate of approximately $35 per delivery. Based on the typical number of route stops possible in one day, Plaintiffs generally earned an average of $500-$600 per week, while working 50-60 hours, for an effective hourly rate of approximately $10/hour for all hours worked, including overtime hours.

47. At all relevant times, Plaintiffs were entitled under federal law (FLSA) to overtime at the rate of 1.5 times their regular hourly rate of $10, for an overtime rate of $15 per hour for all hours worked in excess of 40 per week.

48. From 2012 through 2016, Plaintiffs were entitled under New York State law (NYLL) to overtime at the rate of 1.5 times their regular hourly rate of $10, for an overtime rate of $15 per hour for all hours worked in excess of 40 per week.

49. At all times subsequent to December 31, 2016, Plaintiffs were entitled under New York State law (NYLL) to overtime at the rate of 1.5 times the lawful minimum wage for all hours worked in excess of 40 per week. Specifically, for employees of New York

10

City employers with more than 10 employees, like Defendants, the lawful minimum overtime wage was $16.50/hour in 2017; $19.50/hour in 2018; and $22.50/hour in 2019.

50. Named Plaintiff Hernandez was subjected to the above unlawful wage practices. At all relevant times, Defendants paid Hernandez an effective hourly rate of approximately $10/hour for all hours worked, including overtime hours, which was below the lawful overtime wage to which he was entitled under federal and state law.

51. As a result of Defendants' failure to pay Plaintiffs the lawful overtime wage, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to all damages provided for by statute, including, but not limited to, unpaid wages, 100% liquidated damages, and attorneys' fees.

**Failure to Provide Wage Notices**

52. At all relevant times, Defendants failed to provide Plaintiffs the wage notices required under Section 195 of the NYLL.

53. Specifically, Plaintiffs (including the Named Plaintiff) were not provided with written notice of the employee's "rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer…; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer…." Upon information and belief, Defendants have employed the above unlawful wage practices since they opened in 2013.

**Failure to Provide Wage Statements**

54. At all relevant times, Defendants failed to provide Plaintiffs with wage statement required under Section 195 of the NYLL.

55. Specifically, Plaintiffs were not provided, at the time they were paid, with a statement or pay stub setting forth "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

### FIRST CLAIM FOR RELIEF
### (FLSA Overtime Wage Claim)

56. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

57. At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

58. Throughout the statute of limitations period covered by these claims, Plaintiffs regularly worked in excess of forty hours per work week.

59. At all relevant times, Defendants have operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules, of willfully failing and refusing to pay Plaintiffs at 1.5 times their regular rate for all work in excess of forty hours per work week, even though Plaintiffs have been and are entitled to such overtime pay.

60. At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs at the required overtime rate, 1.5 times their regular rate for hours worked in excess of forty per work week.

61. Plaintiffs seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (New York State Minimum Wage Claim)

62. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

63. From approximately 2017 to the present, Defendants knowingly paid Plaintiffs less than the New York State Minimum Wage under NYLL § 652 for New York City employers with more than 10 employees.

64. Defendants did not pay Plaintiffs at least the lawful minimum wage for all hours worked during that period.

65. Defendants' failure to pay Plaintiffs the lawful minimum wage was willful within the meaning of NYLL § 663.

66. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their respective unpaid compensation, liquidated (double) damages as provided by the NYLL for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (New York State Overtime Claim)

67. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

68. Throughout the statute of limitations period covered by these claims, Plaintiffs frequently worked in excess of forty (40) hours per work week.

69. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any work week.

70. At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs at the required overtime rate, which is 1.5 times the greater of the lawful minimum wage or the employee's regular rate, for hours worked in excess of forty (40) per work week.

71. Defendants' failure to pay Plaintiffs overtime was willful within the meaning of NYLL § 663.

72. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their respective unpaid overtime compensation, liquidated (double) damages as provided by the NYLL for overtime wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (New York State Wage Notice Claim)

73. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

74. Throughout the statute of limitations period covered by these claims, Defendants failed to provide Plaintiffs with wage notices required pursuant to NYLL § 195.

75. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants a penalty of $50 per day for each violation, not to exceed $5,000 per employee, under NYLL § 198(1-b).

### FIFTH CLAIM FOR RELIEF
### (New York State Wage Notice Claim)

76. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

77. Throughout the statute of limitations period covered by these claims, Defendants failed to provide Plaintiffs with wage statements required pursuant to NYLL § 195.

78. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants a penalty of $50 per day for each violation, not to exceed $5,000 per employee, under NYLL § 198(1-b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims

    in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

B.   Designation of Named Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.   Designation of this action as a class action pursuant to Fed.R.Civ.P. 23;

D.   Designation of Named Plaintiff as Representative of the Class;

E.   An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F.   Penalties available under applicable laws;

G.   Costs of action incurred herein, including expert fees;

H.   Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, and other applicable statutes;

I.   Pre-judgment and post-judgment interest, as provided by law; and

J.   Such other and further relief as the Court may deem just, equitable, and proper.

Dated: September 19, 2019

                 MICHAEL P. PAPPAS LAW FIRM, P.C.

            By:   s/Michael P. Pappas
                Michael P. Pappas, Esq. (MP 6716)
                3 Columbus Circle, 15th Floor
                New York, New York 10019
                T: (646) 770-7890
                F: (646) 417-6688

                *Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*